for today is number 23-10123 Cattrell Ivory v. United States. Good morning. Laura Sapir on behalf of Appellant Cattrell Ivory. May it please the court. I would just start with round one where the appellant had alleged that his counsel had improperly induced him to reject a favorable pre-offer by misrepresenting that a cell site expert as well as a co-defendant would testify in his favor. And judging on the government's brief, it doesn't appear that they're contesting deficient performance on this prong. I think it's readily apparent that counsel is deficient. She lied to the court. She lied to the defendant. She defrauded the defendant by taking his money for an expert she had never retained. So on that point, I would focus mostly on prejudice, although I would say that the egregiousness of counsel's misrepresentations to the defendant also goes to the prejudice analysis. Now, I want to first discuss the Aaron case, which is the 11th Circuit. And in that case, this court noted that a petitioner need only allege, not prove, reasonably specific non-conclusory facts that, if true, would entitle the petitioner to relief. And then they noted that it's the evidentiary hearing where the proof comes up. In that case, this court remanded for an evidentiary hearing, noting that defendant plainly alleged facts regarding his diligence, which were not affirmatively contradicted by the record. I think we can just assume that counsel is deficient here. Yes. At least speaking for myself, I'm not going to argue with you on that. Yes, of course. But on the prejudice point, wasn't his primary defense actual innocence? Yes, it was. And I want to discuss some of the cases that the district court, as well as the government, has cited about his protestations of innocence, which supposedly undermines his claim that he would have accepted a plea. But first, I want to discuss a case that we had provided supplemental authority on, which was also discussed in the district court's order, and that's Cullen. And in that case, the district court had rejected the magistrate's proposed finding of prejudice without hearing the defendant's testimony and making a credibility determination himself. In that case, the Second Circuit noted that a defendant's claims of innocence are merely a credibility factor, which is relevant to any conclusion as to whether he has shown a reasonable probability that he would have pled guilty and is therefore not dispositive. The court also noted that while the defendant may well have abandoned his claim of innocence, had he been properly informed of the significant differences in sentencing range. And I think anyone who's been a defense attorney knows that sometimes people claim their innocence and still plead guilty when faced with a prospect. Cullen's from the Second Circuit, right? Yes. And isn't the Eleventh Circuit case law pretty clear that repeated protestations of innocence are pretty strong evidence that a defendant would not have accepted a plea? I think those cases are distinguishable. So I would draw attention to Oliver, which is in the Eleventh Circuit, and that was dismissed based on a pleading insufficiency. There, the defendant only claimed he would have seriously considered the plea offer. He did not allege that he would have accepted it. And yes, the court noted the protestation of innocence, but only saying that it undermines his claim. It does not conclusively refute his claim that he would have consented to a plea agreement. And then the Rosen case, there again the defendant only alleged that he would have instead insisted that counsel seek a plea bargain. He failed to allege that he would have accepted it and would have insisted on, instead insisted, not insisted on going to trial. Excuse me. Let me ask you a question. We're making this calculation. Yes. And we do it all the time on Strickland analysis. Whether you call it credibility or you call it something else, we're always weighing evidence and trying to say, is there enough? Yes. Here you had a couple of problems. First, the argument is there was a clearly exculpatory witness who said he would have testified. Yes. Is it not part of the calculus to ask what the likelihood would have been that he really would have testified? I think so, yeah. And if that's a fair part of the calculus, among other things, we're talking now about whether there should have been a hearing or not, whether the judge was within his power to decide this without a hearing. That's really the essential question, it seems to me. The likelihood that a defendant has already been convicted of robbery and his case is on appeal would actually get on the stand during the course of time that his case is on appeal strikes me as really remote and unlikely. I understand. And the letter itself that we have doesn't say, if called, I would waive my right against self-incrimination. The only reason I ask it is I cannot imagine any defense lawyer not saying to her client, if you get on the stand while your appeal is pending and you admit robberies two and attempted robberies three, you're in real trouble with regard to your later appeal. So it's powerfully in your witness, in your interest not to say anything. If that's part of the calculus, that weighs against your position. It certainly doesn't dispose of the question, but it's one pretty heavy prong weighing against you. Have I misunderstood that? You haven't, and in theory that's correct. However, Mr. McCann's appeal only concerned a legal issue, which was whether the attempted Hobbs Act robbery constituted a crime of violence. And on top of that, he opted for a bench trial, which was based on stipulated facts. So him going up there and giving admissions of guilt, I don't see how that would jeopardize his appeal. So if it was your client, you would have said, sure, go forward, testify even though your appeal is pending? I cannot imagine that. Probably not. And the reason you wouldn't is the reason that most defense lawyers wouldn't. You wouldn't want to open it up to lots of different things there. One, the appeal might get dumped. Two, he might get tagged with perjury. Three, he might get tagged with the uncharged robbery. Those at least were real palpable risks, weren't they? Yes, they were. But I would note that in his letter, he does state that he's available. And if there's a factual dispute as to that, that should be resolved as an evidentiary hearing. I would also add that the government didn't attach any affidavits contradicting that claim, that he was available and would testify. So I think— So the argument can't even be raised? That a court in weighing and balancing can't consider the probability of an exculpatory witness actually getting on the witness stand and exonerating Jones but inculpating himself at the same time? I think it absolutely could be weighed at an evidentiary hearing. I think— Oh, but I can't weigh it now. If there were other factors which would perhaps justify denying that relief, perhaps you could bring— Well, standing alone, it might not be enough. But I just said that's one consideration. Correct, one consideration. That's fair, isn't it? I don't think on its own it's just positive. Now, wasn't there also a risk that if McCann's got on the witness stand and exculpated the defendant petitioner from participation in robbery one, that he would have been asked about the other robbery? And remember, the defendant got on the stand and said, I didn't commit robbery one, I didn't commit robbery two, and I didn't even commit an attempt to robbery three. So wasn't there a powerful risk of his testimony, assuming he was bold enough and his lawyer said, okay, go do it, to get on the stand, that he would have been asked a question that would have put him in 180 degrees from where the defendant, in this case the petitioner, testified, who said, I didn't do any of it? That's certainly a possibility, but again— More than a possibility, because given what he said, what's really deafening about the statement is he exculpates him only from one and says nothing about two or even three. Correct. And again, I go back to an evidentiary hearing, but I'd also add that perhaps Mr. Ivory would not have testified. Well, what's an evidentiary hearing going to help me with regard to weighing that particular collision? As to whether it's credible or whether it would go to the prejudice analysis of— Well, no, it goes to the prejudice analysis. I agree with that. My question is, I don't see how I need an evidentiary hearing to help me answer whether that's a factor also weighing against the claim. I respectfully disagree on that point. I think it's something important to— As you said, McCant had already stipulated a fact on at least robberies two and three, right? Yes, I believe it's on those robberies. And it seems to me that what—I know this isn't in the case, but it may have been an ineffective instance of counsel to call someone who had already stipulated two facts on the two robberies that— two of the three robberies that your client was charged with and would be put on the stand and would say he didn't do the first one and then to be consistent with what was going on in the other case, I think you would have to say, well, yeah, he did the other two. Doesn't that put your client in a worse position? I think it can conceivably be an effective assistance, but again, there's the reasonable trial strategy where if, say, counsel had looked at the evidence on the other two robberies and thought he's going to lose this anyway, but let's get him off on robbery number one. I think that would have been potentially a reasonable trial strategy. The reason we raise the question is our law says when a defendant raises a question of ineffective assistance of counsel based on counsel's failure to call a witness, the defendant carries, we've said, a heavy burden to show prejudice because often allegations of what a witness might say are frequently wholly speculative in nature. That's sort of the reason I just raised the question with you. Well, I think his letter says he would say those things. No, but we're called to weigh probabilities all the time in looking at prejudice. And so you have, one, the real problem that he might not really have testified because his lawyer would have said big risk. Two, if he was bold enough to go forward and testify, and he would have said, yeah, I did two and three. The defendant didn't do one. And he would have been asked as sure as night follows day, did the other guy do two and three? If he said no, it would have been consistent with your client's testimony. But if he said yes, then it would have undermined the very defense itself. And so in the weighing process, you have to consider that too. That's all I'm suggesting to you. And these are things that an evidentiary hearing would not help. How much premium you put on it is not something an evidentiary hearing is going to illuminate. Again, I don't think that that conclusively refutes his allegations, however, and I think that's an important point. No, I agree, and I don't think it conclusively does anything. But there's more that you have in this case. You have an eyewitness who gets on the stand and says, yeah, I did it and he did it too, and he did it with me, and then you have all the business about the cell information, the phone information. There was an explanation for it, but it certainly was a piece of evidence that went into the mix. And then beyond all of that, you had the defendant actually take the witness stand, and on many critical areas he was studiously ambiguous, like where he was with his girlfriend at a really pivotal point in time. And then you had the ambiguity in the girlfriend's testimony as well. So you had a whole lot of stuff, and they obviously didn't believe the defendant's account when he testified. I mean, so you have all of these things. So your argument has to be all of that's true, and maybe the probabilities are high, but it isn't conclusive, and therefore an evidentiary hearing had to be held. That's really the argument, right? Yes, and we can't speculate as to whether, I mean, Mr. McCann may have said that. He doesn't know if he was involved in the second and third, but he can definitively say he was not involved in the first. I'll cede my time. Good morning, Your Honors, and may it please the Court. John Aycock for the United States. The District Court did not abuse its discretion in denying Ivory's Section 2255 motion without a hearing. For both claims on appeal, the Court correctly concluded that he had failed to establish prejudice based on the record. Starting with this first claim that counsel induced him to go to trial, the record refutes the notion that Ivory would have pleaded guilty had he known that Connor and McCant would not be testifying. This Court's precedent makes clear that this sort of determination can be made without a hearing, and that such a claim is undermined by a defendant affirmatively asserting his innocence at all stages of criminal proceedings, and that's precisely what Ivory did. At trial, he testified unambiguously that he was not involved in any of the three robberies. And at sentencing, during his allocution with the District Court, he acknowledged the plea offers, but explained that he was rejecting them, or that he did reject them, because he was innocent and could not bring himself to admit to something that he did not do. So not only is he maintaining his innocence, but he's also providing a reason why he rejected the plea offers and was going to trial. This Court should follow its precedent in Rosen and Osley and find that the claim is conclusively refuted by the record. And in addition to him affirmatively asserting his innocence, consider also the nature of the testimony that he was relying on. For Connor, we don't know the details, because no affidavit was provided. Connor was the cell site expert, so presumably the testimony would have related to cell site data, but that would have only pertained to the second and third robberies, because there was no incriminating cell site data as to the first robbery. So how Connor's testimony would have fit into the defense at trial isn't entirely clear. As for McCant, as this Court noted, there's sort of a conundrum regarding the second and the third robberies. McCant says he would have testified that Ivory was not there for the first robbery. But of course at the time, Ivory was deciding whether to go to trial or accept the plea offers. All three robberies were in play. If McCant gets up and testifies consistently with Ivory's testimony as to the second robbery, it's false testimony. It would be perjury. Because both Ivory and McCant admitted involvement in that second robbery. And if McCant testifies inconsistently with Ivory's testimony, it's contrary to Ivory's sworn defense and would be highly incriminating. So these are the sorts of things that would be going through Mr. Ivory's decision-making when he's deciding whether or not to go to trial. Either way, the record refutes the notion that his decision to go to trial depended on Connor's and McCant's. So let's get to the heart of the case. Speaking for myself, that's not the main event. The main event comes up under the statute under 2255 and asks whether an evidentiary hearing would be required if the motion and the files and the records of the case conclusively show the prisoner is entitled to no relief. The languages conclusively show. I've got a strong argument, but she says it isn't strong enough to meet the definition, the text of that statute. It's just not conclusive. What's your answer? That's the heart of the case, speaking for myself. Yes, Your Honor. 2255B is clear that the record must conclusively refute the claim in order to resolve a 2255 without an evidentiary hearing. But consider also the burden. The burden in this case is on the petitioner, and the petitioner needs to raise allegations, sworn verified allegations, establishing both deficient performance and prejudice. And if the petitioner is unable to set forth those allegations, then there's no claim of ineffective assistance of counsel that can be substantiated and no evidentiary hearing is necessary. And this Court's decisions in Osley and Rosen make clear that this sort of determination can be made without a hearing, that a record can conclusively refute a claim that a petitioner would have pleaded guilty based on protestations of innocence. And again, we have that here. We have strong, affirmative assertions of innocence, both at trial and sentencing. And we have the testimony of Connor McCant, which ultimately wouldn't have affected the decision-making of Mr. Ivory. If there are no further questions as to the first claim, that brings me to Mr. Ivory's second claim. For this one, he also failed to establish a reasonable probability of a different outcome as to Counts 1 and 2 regarding the first robbery had McCant testified. And the reason why this claim is refuted is the strength of the evidence presented against him at trial. That evidence included Wingster's testimony, which was corroborated by other parts of the record. Wingster walked the jury through the surveillance footage, identifying who was who, identifying Mr. Ivory. Even now, Ivory would implicitly acknowledge that Wingster testified truthfully as to the second robbery. And remember that these are a string of robberies over the course of a few months, the same overlap of participants, the same M.O., the same types of stores. It's all wrapped up in the same course of conduct. Also, when Ivory's arrested, he falsely denies possessing his own phone. Hell no, he says. It's not his phone. That phone, of course, connected him to the second and third robberies via cell site data, but it also connected him to the first robbery because of the flurry of calls from Wingster to McCant and Ivory. Six calls the day before the robbery, which was unusual. And Wingster also used the privacy function during those calls, which was also unusual for Wingster. And the jury heard Ivory's testimony. As Your Honors pointed out, he did not remain silent at trial. He affirmatively asserted his innocence at trial. And the jury heard that shaky testimony and was entitled to draw negative inferences from it, to discredit it and believe the opposite was true. And Ivory now admits that a substantial part of that testimony was false, and that would seem to taint the entirety of it. After McCant's arrest and interrogation for the robberies, the very first call he makes from the jail is to Ivory's mother, Miss Winbush. Who do I need to be calling, she says. McCant wants to relay a message to Ivory to lay low. During the second call made about 20 minutes later, Miss Winbush confirmed she did what was told, she conveyed the message, and the two discussed the robberies. McCant mentions that law enforcement is trying to implicate his mother in the robberies, which makes sense because of the indication of an inside connection for the first one. McCant mentions Winkster and discusses the possibility of federal charges. And that's when Miss Winbush asks whether WUSA, who we know is Ivory, knows where the stuff is. The context is clear, they're discussing the robberies. Unlike Winkster's testimony, there would have been nothing to corroborate McCant's testimony, except potentially the testimony of Brian and Ivory. And a jury's going to have questions. The jury's going to wonder why McCant's not naming the third perpetrator of the first robbery. If it wasn't Ivory, who was it? And a jury's also going to be mindful of where this testimony is coming from. McCant was a felon, Ivory's cousin, and involved in the robberies. McCant's other statements included in his letter wouldn't have made a difference either. The second one relates to him possessing the phone, Ivory's phone, at the time of the second robbery. But Ivory's not contesting that robbery in his 2255 claim. He's not challenging that robbery. Same with the third statement, which relates to the individuals passing the phone around. Again, he's not challenging the second and the third robberies. As for the calls to Ms. Winbush, there's no reasonable probability of a different verdict on counts one and two had the jury heard McCant's after-the-fact explanation for the jailhouse calls. The jury heard the calls, they heard the context. Even taken together, McCant's statements do not establish a reasonable probability of a different outcome on counts one and two. And because the allegations were insufficient to establish prejudice as to both claims, the district court was not required to hold a hearing. And this court should thus affirm the judgment of the district court. If there are no further questions, thank you, Your Honors. Just briefly, I want to first discuss the details about Mr. Conner's testimony. And if there's any ambiguity in it, it was clarified on reply at the district court level where the supposed testimony, based on what Ms. Dickerson said, was that Conner would have testified that Mr. Ivory's personal cell phone, which he gave that phone number at trial, would have pinged near his girlfriend's house and therefore corroborated the alibi defense. As to the cases about him protesting his innocence, the opposing counsel mentioned Rosen, and I wanted to finish what I had previously said about that, is in that case, there were affidavits from all three of defendant's attorneys giving detailed explanations about how he never wanted to plead guilty. We don't have any affidavits in this case from counsel saying, oh yeah, there was no interest in it whatsoever. So on that point, I think that distinguishes the case because as it stands now, there isn't evidence conclusively refuting him saying that he would have accepted the plea. Again, innocent people or people who claim to be innocent accept pleas all the time. I would highlight again that none of the allegations or arguments made by the government conclusively refute his claims, which would warrant a hearing. And then I just want to briefly highlight, and as to the deficient performance prong, I know that's kind of been assumed in this case, but the egregiousness of her conduct is so important in improperly inducing him into the plea that it just bolsters his claim of prejudice. He was told that Connor's evidence would have destroyed the government's case. He was told that the government had no evidence against him. And these were not only misadvice, but lies. They were lies. So had he not been told those lies, that bolsters his claim that he would have perhaps abandoned his claims to innocence. And again, that's something that's discussed in, I apologize, I lost the case, but there's one of the cases where, in the Cullen case, where the court notes that the defendant may well have abandoned his claim of innocence had he been properly informed. And unless the court has any additional questions, I would cede my time. The remedy I would ask for is to remand for an evidentiary hearing in front of a different judge in order to preserve the appearance of justice. Thank you. Thank you, counsel. Court will be in recess until 9 a.m. tomorrow morning.